## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 42514

THOMAS L. STRONG and BRIAN K. HAWK, )
)
) **Boise, January 2016 Term**
  **Plaintiffs-Appellants,** )
) **2016 Opinion No. 27**
v. )
) **Filed: March 4, 2016**
INTERMOUNTAIN ANESTHESIA, P.A. and )
MARCUS E. MURPHY, M.D., ) **Stephen W. Kenyon, Clerk**
)
  **Defendants-Respondents.** )

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

District court order granting dismissal for failure to prosecute, <u>affirmed</u> in part and reversed in part.

Lowell N. Hawkes, Chtd., Pocatello, for appellants. Lowell N. Hawkes argued.

Duke, Scanlan & Hall, Boise, for respondents. Richard E. Hall argued.

_____

BURDICK, Justice

Thomas L. Strong (Strong) and Brian K. Hawk (Hawk) (collectively Appellants) appeal the Bonneville County district court's order granting dismissal of their case pursuant to Idaho Rules of Civil Procedure 41(b) for failure to prosecute a claim and 40(c) for unjustified inaction for over six months. We affirm in part and reverse in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2004, both Appellants underwent individual surgical procedures to implant neuron simulators. The surgeries were performed by Catherine Linderman, M.D., at Eastern Idaho Regional Medical Center in Idaho Falls. Anesthesia for the procedures was administered by certified registered nurse anesthetists (CRNAs) under the supervision of Marcus E. Murphy, M.D., the supervising anesthesiologist provided by Intermountain Anesthesia (Dr. Murphy and Intermountain collectively "Respondents"). According to Dr. Linderman, at some point during the procedure on Strong, CRNA Christian Schmalz inappropriately increased the anesthesia dosage to an amount that was "excessive for the circumstances" and then left Strong unattended.

1

Strong alleges that the higher dosage caused his chin to drop down during the procedure and obstruct his airway, which resulted in him not being able to breath and ultimately caused negative pressure pulmonary edema—permanent lung damage caused by scarring that results from blood being pulled through the blood vessel walls into the lung tissue from coughing as the patient attempts to breath. As a result of Strong's experience, Dr. Murphy allegedly ordered a reduction in the pain medication of all of Dr. Linderman's patients. Consequently, Hawk experienced significant pain when he underwent his surgery later in the day.

On May 24, 2006, Appellants filed a prelitigation screening request with the Idaho State Board of Medicine. On October 9, 2006, Hawk filed a petition for bankruptcy in the U.S. Bankruptcy Court, District of Idaho, and on November 1, 2006, he filed an amended schedule of assets. Hawk did not list his cause of action against Respondents in his original or amended asset schedules. On November 20, 2006, the Board issued its advisory opinions. On December 20, 2006, Appellants jointly filed a complaint against Respondents alleging negligence and medical malpractice.

The district court stayed proceedings in the case on March 7, 2007, pending Hawk's bankruptcy proceeding. By letter dated February 2, 2007, Respondents sent Appellants' counsel a stipulation to bifurcate so that Mr. Strong's claim could proceed. Appellants' counsel, however, did not agree to the bifurcation. Hawk's bankruptcy case closed on May 15, 2008. Two years later, on July 1, 2010, Respondents filed a Motion to Lift Stay and a Motion to Dismiss for Failure to Prosecute, or Alternatively, Motion for Summary Judgment. On July 16, 2010, the district court lifted the stay and set the motion to dismiss for hearing. At the hearing, Appellants noted that Hawk had not disclosed the present underlying cause of action during his bankruptcy proceedings. The district court granted Appellants sixty days to rectify the bankruptcy matters. Appellants then requested the bankruptcy court to reopen the case and the district court again stayed its proceedings pending the resolution of the disclosure issue in the bankruptcy schedules.

The bankruptcy trustee ultimately determined that the action was of no value to the bankruptcy estate and on February 28, 2013, the bankruptcy court entered an order reclosing the case. A year later, on April 14, 2014, Respondents filed a Renewed Motion to Dismiss, or Alternatively, Motion for Summary Judgment. The district court heard argument on the matter and in an Opinion and Order dated July 28, 2014, dismissed Appellants' cause of action pursuant

2

to Idaho Rules of Civil Procedure 40(c) for unjustified inaction for over six months and 41(b) for failure to prosecute a claim. Appellants appeal.

## II. STANDARD OF REVIEW

A trial court's dismissal of a case under Rule 41(b) is reviewed for abuse of discretion. *Day v. CIBA Geigy Corp.*, 115 Idaho 1015, 1017, 772 P.2d 222, 224 (1989). Dismissal under Rule 40(c) is also reviewed for abuse of discretion. *Morgan v. Demos*, 156 Idaho 182, 186, 321 P.3d 732, 736 (2014). "To prove an abuse of discretion, this Court applies the three-factor test. The three factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Fox v. Mountain West Elec., Inc.*, 137 Idaho 703, 711, 52 P.3d 848, 856 (2002).

## III. ANALYSIS

On appeal, Appellants contend that the district court committed error by granting dismissal with prejudice under Idaho Rules of Civil Procedure 40(c) and 41(b). Respondents assert that the district court did not err in granting dismissal under Rules 40(c) or 41(b) because the court acted within the bounds of its discretion. Alternatively, Respondents argue that Hawk's claims are barred by the doctrine of judicial estoppel, and that claims against Intermountain fail due to the applicable statute of limitations.

**A. The district court erred in granting dismissal under Rule 41(b).**

Appellants contend that dismissal under Rule 41(b) was in error because Respondents did not show that they suffered "*any* actual demonstrated prejudice" due to the passage of time. Specifically, Appellants argue that the district court's single statement, without more, that "one potential witness died, one became undiscoverable, and one moved out of state," is insufficient to support a finding of actual prejudice.

Dismissal under Rule 41(b) is reviewed for abuse of discretion. *Day*, 115 Idaho at 1017, 772 P.2d at 224. In determining whether an action should be dismissed under Rule 41(b) the district court must consider, "the length of the delay occasioned by the plaintiffs' failure to move the case, any justification for the delay, and the resultant prejudice to the defendant." *Id.* "The emphasis of the court's analysis should be on the prejudice to the defendant and not on the length of the delay *per se*." *Gerstner v. Wash. Water Power Co.*, 122 Idaho 673, 677, 837 P.2d 799, 803

(1992). Prejudice, in turn, "must consist of more than general concerns about the passage of time and its effects on the memories of witnesses and the ability to prepare a case. There must be actual, demonstrated prejudice to the moving party." *Id.* Finally, dismissal under Rule 41(b) is considered a sanction rather than a remedy and should be used sparingly. *Day*, 115 Idaho at 1017, 772 P.2d at 224.

In the present case, the district court specifically found: (1) two periods of delay of over one year; (2) that Appellants' justification for the delay was insufficient; and (3) that the fact that "one potential witness died, one became undiscoverable, and one moved out of state" was sufficient to show that Respondents had suffered actual prejudice.

The district court fulfilled the first *Day* requirement to consider the length of delay by clearly noting two periods of inactivity by Appellants. The first period occurred between May 15, 2008, and July 1, 2010, and the second period occurred between February 23, 2013, and April 14, 2014. The district court fulfilled the second *Day* requirement—to consider the justification for the delay—by "reviewing the affidavits" of the Appellants and ultimately concluding that Appellants "have not provided just cause for the delays." In considering the third *Day* requirement—that of actual prejudice to the moving party—the district court found: "[Respondents] pointed out that during this prolonged time, one potential witness died, one became undiscoverable, and one moved out of state. By citing these specific instances of prejudice, [Respondents] have affirmatively shown prejudice." However, this finding was not supported by any evidence showing actual instances of the Respondent's inability to adequately and effectively prepare their case.

Here, the three witnesses at issue are: Robert Hauge, Mary Waid, and Christian Schmalz.

Robert Hauge was one of the treating CRNAs who attended Hawk. Respondents presented an affidavit stating that Hauge had died, but there is no evidence to show that he is a key witness or how his absence would affect Respondent's ability to prepare their case. Indeed, Appellants' complaint does not reference Hauge at all but specifically identifies CRNA Jeff Taylor as the CRNA who was prohibited "from giving adequate pain relief to Mr. Hawk." The loss of Hauge as a witness does not establish actual demonstrated prejudice.

Mary Waid is the treating CRNA who allegedly discovered that Strong's anesthesia had been turned up to a multiple of what was required. Respondents stated in their affidavit, "Mary Waid has retired and [Respondents] are unaware of her current residence." However, there was

4

no evidence that Respondents made any attempt to locate Waid. Absent a reasonable effort to locate Waid, there can be no showing of prejudice. In *Systems Associates, Inc., v. Motorola Communications and Electronics, Inc.*, 116 Idaho 615, 778 P.2d 737 (1989), the district court found prejudice based upon "the defendant's unrefuted statements that key witnesses have been reassigned or have left the corporation, and that memories have dimmed." *Id.* at 619, 778 P.2d at 741. We held that actual prejudice was not shown because "[t]here was no showing that any key witness had become necessarily unavailable." *Id.* at 620, 778 P.2d at 742.

Christian Schmalz is the CRNA who allegedly improperly turned up Strong's anesthesia and left him unattended resulting in Strong's injuries. Respondents stated in their affidavit, "Christian Schmalz's last known residence was in Washington state." Washington has enacted the Uniform Interstate Depositions and Discovery Act, RCW §§ 5.51.010 to 5.51.902, which permits a party to present a subpoena issued in another state to the clerk of court in Washington, who must then promptly issue a subpoena for service upon the person to whom the foreign subpoena is directed. Thus, Respondents can obtain a subpoena in Washington to require Schmalz to appear at a deposition in that state. Having to go through that process and travel to Washington for the deposition does not constitute prejudice. There is no showing that Schmalz had become necessarily unavailable.

Respondents' statements, without more, that "one potential witness died, one became undiscoverable, and one moved out of state" are not enough to show actual demonstrated prejudice. *Gerstner*, 122 Idaho at 678, 837 P.2d at 804 ("The movant must demonstrate prejudice by actual instances of his or her inability to adequately and effectively prepare the case . . . ."). We will not presume prejudice. *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 93, 982 P.2d 917, 928 (1999). Thus, the district court's finding that Respondents were prejudiced because "[Respondent's] pointed out that . . . one potential witness died, one became undiscoverable, and one moved out of state," was not consistent with applicable legal standards.

Therefore, because there was no showing of actual demonstrated prejudice the district court's dismissal under Rule 41(b) is reversed.

## B. **The district court did not err in granting dismissal under Rule 40(c).**

Appellants argue that the district court erred because the district court did not send out notice of the pending dismissal under Rule 40(c) and because Appellants showed good cause for retention.

1. The notice requirement under Rule 40(c).

Under Rule 40(c) a court may dismiss an action in which no action has been taken for a period of six months if there is no showing of good cause for retention of the action. The rule also provides that "[a]t least 14 days prior to such dismissal, the clerk shall give notification of the pending dismissal." However, in *Morgan v. Demos*, 156 Idaho 182, 321 P.3d 732 (2014), we held that the district court did not have to send out notice if the party moving for dismissal provides actual notice to the nonmoving party and the nonmoving party has the opportunity to be heard. *Id.* at 187, 321 P.3d at 737. Appellants argue that "*Morgan* is bad law as it silently excused a judge's primary duty to prevent delay," and that the purpose of Rule 40(c) notice is to inform counsel of what is required to avoid dismissal.

However, it is the plaintiff's, not the judge's, primary duty to prosecute the civil action. *Warden v. Lathan*, 96 Idaho 34, 35, 524 P.2d 162, 163 (1974); *Hansen v. Firebaugh*, 87 Idaho 202, 206–07, 392 P.2d 202, 204 (1964). Furthermore, we have clearly stated that: "The notice requirement exists in order 'to enable [counsel of record] to show good cause for retaining the case.' " *Morgan*, 156 Idaho at 186, 321 P.3d at 736 (2014) (alteration in original) (quoting *Rudd v. Merritt,* 138 Idaho 526, 529 n.1, 66 P.3d 230, 233 n.1 (2003)).

Here, like in *Morgan*, the district court did not send out notice under Rule 40(c), but also like *Morgan*, Respondents filed a motion to dismiss and a hearing was held to determine good cause. Moreover, in *Morgan* the time difference between the motion being filed and the hearing was only six days. Here, the difference was over thirty days. Therefore, because Appellants had opportunity to show good cause for retention the notice requirement of Rule 40(c) was fulfilled by the filing of Respondent's motion to dismiss and the subsequent hearing. Appellants' argument to the contrary fails.

2. Good cause under Rule 40(c).

This Court has clearly set out the standard of review for good cause under Rule 40(c): "We now clarify the standard under 40(c) as follows: the determination of whether good cause is shown for retention is within the trial court's discretion. If the trial court finds, in its discretion, that good cause for retention is not shown, then dismissal under Rule 40(c) is mandatory." *Morgan*, 156 Idaho at 186, 321 P.3d at 736. The Court further elaborated: "[I]n order to show good cause under Rule 40(c), a party must present sworn testimony by affidavit or otherwise setting forth facts that demonstrate good cause for retention of a case." *Id.* at 187, 321 P.3d at

6

737. Additionally, the trial court's "findings and conclusions which are based on substantial although conflicting evidence will not be disturbed on appeal. The credibility and weight to be given evidence is in the province of the trier of fact, and the findings made by the trial judge will not be set aside unless clearly erroneous." *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990).

Here, as noted above in the discussion about Appellant's justification for delay under Rule 41(b), the district court noted two periods of inactivity by Appellants. The first period occurred between May 15, 2008, and July 1, 2010, and the second period occurred between February 23, 2013, and April 14, 2014.[1] Both of these periods were well beyond the six month requirement under Rule 40(c). Then, also as noted previously, after "reviewing the affidavits" of the Appellants the district court determined that Appellants "have not provided just cause for the delays." Indeed, Appellants freely admit that they do not have any "of record filings" to dispute the district court's ruling. Rather, Appellants simply assert that counsel's single affidavit stating that they were in discussion with Respondents about "moving forward" was sufficient to demonstrate good cause for the delay.[2] Thus, Appellants are essentially asking this Court to re-weigh the evidence of good cause that was presented to the district court. This is something the Court will not do. *Bringman v. New Albertsons, Inc.*, 157 Idaho 71, 74, 334 P.3d 262, 265 (2014) ("This Court will not consider re-weighing the evidence or whether it would have drawn different conclusions from the evidence presented.").

Therefore, because there were two delays of over six months and there was no good cause shown for such delays we affirm the district court's dismissal under Rule 40(c). Because we affirm the district court's Rule 40(c) dismissal, we do not reach the judicial estoppel or the applicable statute of limitations issues raised by Respondents.

**C. Attorney Fees and Costs.**

---

[1] The district court's docket shows that no filings whatsoever occurred between September 9, 2007 and July 1, 2010, and again between November 1, 2010, and April 8, 2014, with the exception of a filing by the court reporter on August 1, 2013.

[2] Appellants claim to have notified Respondents of the closure of Hawk's Bankruptcy case, however, Appellants did not take any steps to notify the district court that the stay had lifted and the case could proceed. Furthermore, based upon Appellants' counsel's description of the injuries sustained by his clients, it appears that Strong suffered more grievous injuries than Hawk. Even though Strong was not a party to any bankruptcy, his claim languished for years during the prolonged delay initially precipitated by the filing of Hawk's bankruptcy. Counsel does not indicate why action was not taken to pursue Strong's case during this lengthy period of time.

7

Respondents request fees on appeal pursuant to Idaho Code section 12-121. "Under I.C. § 12-121, attorney fees are awarded to the prevailing party if the court is left with the belief that the proceeding was brought, pursued or defended frivolously, unreasonably, or without foundation." *Harris v. State, ex rel. Kempthorne*, 147 Idaho 401, 406, 210 P.3d 86, 91 (2009). Further, "Under I.C. § 12–121, a party is entitled to attorney's fees if the appeal merely invites the appellate court to second guess the trial court on the weight of evidence." *Kelley v. Yadon*, 150 Idaho 334, 338, 247 P.3d 199, 203 (2011).

However, this is a somewhat unique case and the Court will employ another available mechanism to compensate Respondents for their costs and fees incurred on appeal. Idaho Appellate Rule 11.2(a) requires that the attorney of a represented party sign the appellate brief and that such signature constitutes a certificate that the brief is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." If the brief is signed in violation of the rule, the Court "upon its own initiative, shall impose upon the person who signed [the brief] an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the [brief] . . . including a reasonable attorney's fee." Appellants' brief in this case is not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

Our conclusion in this regard is based upon counsel's argument regarding Rule 40(c). In his argument, Appellants' counsel contended that dismissal under Rule 40(c) was improper because the district court did not comply with the plain language notice requirements of that rule—that is, that the district court itself is responsible for issuing notice of pending dismissal and that notice by way of motion by opposing counsel is insufficient to satisfy the requirements of Rule 40(c). Counsel argues that the district court must give the notice because the district court is responsible for notifying counsel of what is required to prevent dismissal of the case.

Counsel's argument was definitively rejected in *Morgan v. Demos*, 156 Idaho 182, 186, 321 P.3d 732, 736 (2014). There, the Court stated: "The notice requirement [of Rule 40(c)] exists in order 'to enable [counsel of record] to show good cause for retaining the case.'" In *Morgan*, the district court did not itself send out notice under Rule 40(c) but the defendant filed a motion to dismiss. We held:

8

> While it is true that the district court never sent out notice as contemplated in Rule 40(c), Morgan did have actual notice that his case could potentially be dismissed under that same rule as of April 3, 2012, the date that Respondents filed their motion to dismiss. The purpose of the notice requirement—to allow counsel to show good cause for retaining the case—was not circumvented here because Morgan was given a hearing to show good cause on April 9, 2012. Because Morgan had actual notice of his case's possible and pending dismissal, and because he was given an opportunity to show good cause for retention, the district court's failure to give notice was not reversible error.

*Id.* at 187, 321 P.3d at 736.

As we noted above, the current case is essentially the same as *Morgan*. Although counsel in this case did not represent Mr. Morgan on appeal, he did represent Morgan in proceedings in the district court and was obviously well aware of the *Morgan* ruling. Counsel's argument on appeal in this case is that "Morgan was bad law as it silently excused a judge's primary duty to prevent delay." Counsel's approach was to place the blame for dismissal on the district court for the two-year delay that took place in that case. That is not a good faith argument for the reversal of *Morgan*. Counsel does not contend that he did not have notice of the pending dismissal for inactivity. He did not carry out his responsibility under Rule 40(c) to make a showing of good cause for retention of the case. When asked at oral argument before this Court if it was not the responsibility of an attorney who files an action to diligently prosecute the same, counsel blamed an opposing attorney and then the judge as being the guilty parties for not prosecuting the case.

Therefore, the Court, acting upon its own initiative, imposes as a sanction on Appellants' counsel, Lowell N. Hawkes, an order to pay Respondents' reasonable attorneys fees and costs incurred in defending this appeal.

## IV. CONCLUSION

We reverse the district court's Rule 41(b) dismissal and affirm the district court's Rule 40(c) dismissal. Fees and costs to Respondents as against Appellants' counsel, Lowell N. Hawkes.

Chief Justice J. JONES and Justices EISMANN, W. JONES and HORTON, CONCUR.

9